# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 2:11 CR 68** |
| | ) | |
| **DAVID ALAN RESNICK** | ) | |

## OPINION and ORDER

Petitioner David Alan Resnick has filed a motion to vacate his sentence under 28 U.S.C. § 2255. (DE # 183.) Resnick argues that he is entitled to relief on the basis that his trial counsel provided ineffective assistance during the plea, trial, and sentencing phases of his case. For the reasons that follow, Resnick's motion will be denied.

## I.    BACKGROUND

### A.    *Plea Agreement*

In May 2011, a grand jury indicted Resnick on charges of aggravated sexual abuse of a nine-year-old boy (hereinafter "A.M.") in violation of 18 U.S.C. § 2241(c) (Count I) and transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) (Count II). (DE # 1.) In January 2013, Resnick entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), in which he agreed to plead guilty to Count Two, in exchange for the Government's dismissal of Count One. (DE # 23.)

In the Plea Agreement, Resnick and the Government agreed to recommend certain sentence enhancements, two of which are relevant here. First, Resnick agreed to a seven-level enhancement under § 2G2.2(b)(3)(E) for distributing child pornography to

a minor with the intention of persuading, inducing, enticing, coercing or facilitating the travel of a minor to engage in prohibited sexual conduct. (*Id.* at 4.) Second, he agreed to a five-level enhancement under § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. (*Id.*) The Plea Agreement contained a provision that permitted the Government to withdraw from the Agreement if Resnick violated any of the provisions of the Plea Agreement, including his continuing obligation to demonstrate acceptance of responsibility. (*Id.* at 5.) The Plea Agreement, if accepted by this court, would have lowered the minimum penalty Resnick faced from 30 years, to five, and would have lowered the maximum penalty Resnick faced from life, to 20 years.

B. *Change of Plea Hearing*

On February 13, 2013, Resnick appeared with his counsel for his change of plea hearing before Magistrate Judge Andrew P. Rodovich. During the hearing, Judge Rodovich went over the Plea Agreement with Resnick, including the Guidelines calculations. Resnick agreed with all of them. (DE # 31 at 7-9.)

Judge Rodovich then requested that the Government recite the factual basis for the plea, which had not been incorporated into the Plea Agreement. The Government stated that the evidence at trial would have shown, among other things, that Resnick transported minor A.M. across state lines on "a two-week, over-the-road trip" and "[w]hile on that trip, the defendant sexually abused A.M. repeatedly." (*Id.* at 18.) When

Judge Rodovich asked Resnick whether he agreed with the Government's recitation of the factual basis for the plea, Resnick disagreed. While Resnick agreed with the Guidelines calculation set forth in the Plea Agreement – including the enhancements identified in subsections 7(d)(ii)(B), and (D) – he denied engaging in any contact offense with the victim. (*Id.* at 21.)

First, while Resnick agreed to a seven-level enhancement for showing child pornography to a minor with the intent to entice the minor to engage in sexual conduct, under USSG § 2G2.2(b)(3)(E), he claimed that A.M. found the child pornography on Resnick's computer on his own. (*Id.* at 22-23.) Resnick told Judge Rodovich that he was agreeing to the enhancement "for guideline purposes." (*Id.* at 23.) However, when pressed by Judge Rodovich, Resnick attempted to walk his denial back, and agreed that he had provided child pornography to A.M. (*Id.* at 24.)

Next, Judge Rodovich attempted to clarify Resnick's position on the five-level enhancement under USSG § 2G2.2(b)(5), for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. While Resnick agreed to the imposition of the enhancement, he denied that he ever sexually abused A.M. or any other minor. (*Id.* at 25.) Resnick first attempted to explain his position by claiming that the possession of child pornography itself would constitute a pattern of activity involving the sexual abuse or exploitation of a minor. (*Id.* at 26.) However, the Government correctly explained that the definition of "sexual abuse or exploitation" specifically excludes the

3

mere receipt or possession of child pornography.[1]  When Judge Rodovich explicitly

asked Resnick whether he traveled in interstate commerce with the intent of engaging

in a pattern of activity involving sexual abuse or exploitation of a minor, Resnick

responded, "No, I did not." (*Id.* at 29.)

The Government then expressed its position that Resnick had breached the terms

of the Plea Agreement by denying relevant conduct and denying the factual basis for

the sentencing enhancements. The Government stated that it wished to withdraw from

the Agreement. (*Id.* at 34-36.) Defense counsel's position was that Resnick could agree to

the enhancements for the purpose of reaching an agreement with the Government,

while also maintaining his denial that he engaged in the conduct that would support

the enhancements, on the basis that he was not pleading guilty to the offense related to

that underlying conduct. (*Id.* at 35.)

Judge Rodovich granted the parties nine days to determine whether a resolution

could be reached regarding the Plea Agreement. The parties could not come to an

agreement and at a second change of plea hearing, before this court on February 22,

2013, the Government requested that this court permit it to withdraw from the

Agreement. (DE # 157 at 3.) Resnick's counsel, who Resnick concedes "vigorously

---

[1] "'Sexual abuse or exploitation' does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." USSG § 2G2.2, Comment., 1. *Definitions*.

defended" the validity of the Plea Agreement during discussion with the prosecutor and Judge Rodovich, told this court "there is no plea agreement." (*Id.* at 5.) This court found that there was no agreement between the parties and set the matter for trial. (*Id.*)

The Government subsequently offered Resnick a second plea deal. (*See* DE # 194-1.) This second deal removed the enhancements that led to the problems during the first change of plea hearing, and instead only required Resnick to admit that he transported child pornography across state lines. (*Id.* at 4.) The second deal, made pursuant to Rule 11(c)(1)(C), would have guaranteed Resnick a 20-year term of incarceration. (*Id.*) Resnick did not accept this second plea deal. (*See* DE ## 53, 189 at 2.)

C.    *Trial*

After Resnick rejected the Government's second plea deal, the Government filed a superseding indictment, adding charges for brandishing a firearm in furtherance of a crime of violence (Count III) and possessing a firearm as a felon (Count IV). (DE # 57.) Thereafter, Resnick's case proceeded to trial on all four counts.

The following recitation of the trial is taken from the Seventh Circuit's opinion on direct appeal.

> In 2008, A.M.[2]  was nine years old and lived in Indiana with his mother and stepfather. Resnick was a friend of the family who sometimes took A.M. and his siblings to dinner or gave them gifts. In July 2008, A.M.'s parents allowed him to accompany Resnick on a two-week, cross-country work trip. A.M. believed that

---

[2]  The Seventh Circuit referred to A.M as "T.M." throughout its opinion. For the sake of clarity and consistency with the parties' briefing, this court has changed the Circuit's references to the victim from "T.M." to "A.M."

they would go to Disneyland, and that it would be his job to care for Resnick's puppy.

A.M. was badly mistaken. Throughout the trip, Resnick sexually abused him, subjecting him to pornography, sexual touching, oral sex, and forcible sodomy. One night, as they were traveling through Washington, Resnick drove by a weigh station without stopping. Washington State Patrol Officer Lace Koler pulled over Resnick's rig. Before Koler walked up to the truck, Resnick put a pistol against A.M.'s head. "If you tell anybody," Resnick said, "I will kill you and your family." A.M. kept silent. Resnick and A.M. returned to Indiana, and A.M. went home. At that time, he told no one about the abuse he experienced on the trip.

Some time after they returned, Resnick invited A.M. and his friend K.M. to a "pool party" at a local Comfort Inn. K.M. was eight years old. There were no other children at the party, and the two boys were to spend the night alone with Resnick in the hotel. Knowing what was in store, A.M. fought with K.M. and threw a cell phone against the wall. He was sent home, leaving K.M. alone with Resnick. Over the course of the night, Resnick showed K.M. a firearm and allowed him to hold it. They slept in the same bed, and Resnick sexually abused K.M. When K.M. returned home, he initially did not tell his mother what Resnick had done to him. But that November, he confided in her, and she called the police.

In April 2011, law enforcement personnel searched Resnick's house in Florida. They found more than 66 hours of video of minors being sexually abused or exploited. Among the items seized was a laptop that A.M. later identified as the one Resnick brought on their 2008 trip. During the execution of the search warrant, Resnick was interviewed by FBI Special Agents Matt Chicantek and Lana Sabata. Chicantek asked Resnick about A.M. and K.M.'s accusations of abuse.

At first, Resnick said that he did not know A.M. and K.M. at all. Then he backpedaled with a denial of any inappropriate behavior. He stated that he could not remember a traffic stop in Washington on his 2008 trip with A.M., and denied staying overnight alone with K.M. at the hotel. He also denied having carried a firearm since his felony conviction in 2000. When Chicantek asked Resnick whether he would be willing to take a polygraph exam, Resnick demurred, saying he would have to talk to a lawyer first and noting that polygraph exams were unreliable. Resnick was later arrested and indicted in the

Southern District of Florida for possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). He pleaded guilty.

At the same time, Resnick was indicted in the Northern District of Indiana on charges related to his abuse of A.M. The Indiana charges included aggravated sexual abuse of a minor, interstate transportation of child pornography, brandishing a firearm in furtherance of a crime of violence, and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 2241(c), 2252(a)(1), 924(c)(1)(A)(ii), and 922(g)(1).

Resnick elected to go to trial on the Indiana charges. Before trial, the government gave notice that it intended to proffer evidence of Resnick's abuse of K.M. Resnick filed a motion in limine to exclude that evidence. The district court denied Resnick's motion, finding the evidence admissible under Rules 414 and 403 of the Federal Rules of Evidence.

Resnick chose not to take the stand at trial. On the third day of the trial, the government introduced evidence during its direct examination of Agent Chicantek that Resnick had denied any abuse of A.M. or K.M. and had declined to take a polygraph. Resnick's counsel did not object.

On cross-examination, Resnick's counsel asked Chicantek if Resnick had sought an attorney during the interview. Chicantek replied that the only time Resnick mentioned a lawyer was when he said that, "before he took a polygraph he would want to consult with an attorney." Later during cross-examination, Resnick's counsel also noted, through a leading question, that Resnick had said that he wanted to speak with a lawyer before taking a polygraph exam. On redirect, Chicantek stated that Resnick had said that he did not want to take the polygraph because "everyone knows that whoever is operating the polygraph machine can manipulate it to say whatever they want to say or the results to be whatever they want them to be." Chicantek also noted that, to his knowledge, Resnick never took a polygraph examination.

During their closing arguments, the government and Resnick's counsel each made one reference to Resnick's refusal to take a polygraph.

The jury convicted Resnick on all four counts.

*United States v. Resnick*, 823 F.3d 888, 890-892 (7th Cir. 2016).

D.  *Sentencing*

After his conviction, Resnick faced a mandatory minimum sentence of 37-years imprisonment and a Guideline recommended sentence of life imprisonment, plus seven years. (*See* DE # 145 at 9.) This court sentenced Resnick to life imprisonment, plus seven years; a fifteen-year term of supervised release; a $400 special assessment; and payment of victim restitution in the amount of $123,210.30. (DE ## 151, 180.) Resnick appealed, and the Seventh Circuit affirmed his conviction. *Resnick*, 823 F.3d at 898.

E.  *Motion to Vacate*

Throughout his criminal proceedings, Resnick was represented by attorneys Raymond Wigell and Huma Rashid. Now, through new counsel, Resnick has filed a motion to vacate his conviction and sentence pursuant to § 2255, on the grounds that he received ineffective assistance of counsel during the plea, trial, and sentencing phases of his criminal proceedings. The court will address each of these arguments in turn.

## II.  LEGAL STANDARD

A § 2255 motion allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. 28 U.S.C. § 2255(a). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

### III.    PLEA PROCESS

#### A.    *Ineffective Assistance Legal Standard*

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

"To satisfy the deficient performance prong, a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (internal citation omitted). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citation omitted).

To satisfy the prejudice prong, a petitioner must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Strickland*, 466 U.S. at 694. "This does not mean that the defendant must show that counsel's deficient conduct more likely than not

altered the outcome in the case. Rather, a reasonable probability is a probability sufficient to undermine confidence in the outcome, which in turn means a substantial, not just conceivable likelihood of a different result." *Harris v. Thompson*, 698 F.3d 609, 644 (7th Cir. 2012) (internal citations and quotation marks omitted). *See also Canaan v. McBride*, 395 F.3d 376, 386 (7th Cir. 2005) ("Even if the odds that the defendant would have been acquitted had he received effective representation appear to be less than fifty percent, prejudice has been established so long as the chances of acquittal are better than negligible." (internal citation omitted)). "Making this probability determination requires consideration of the totality of the evidence before the judge or jury, and a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Harris*, 698 F.3d at 645 (internal citations and quotation marks omitted).

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The performance prong is the same as that outlined in *Strickland*. *Id.* The showing required to establish prejudice varies depending on the specific claim.

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134,

147 (2012). However, the prejudice inquiry does not end there. "[I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id. See also Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.").

A petitioner's "failure to establish either element of the *Strickland* framework will result in denial of his claim." *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). If a petitioner fails to make a proper showing under one of the *Strickland* prongs, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

B.     *Counsel's Performance During the Plea Process*

Resnick argues that his counsel was constitutionally ineffective when he failed to raise an objection before this court to the Government's attempt to withdraw from the Plea Agreement. (DE # 184 at 25.) However, Resnick has not demonstrated that he was prejudiced by his counsel's failure to object.

Resnick was subsequently offered a second plea deal. This deal appeared to give Resnick exactly what he wanted: the benefit of a plea agreement without having to admit to the factual basis underlying the sentence enhancements in the first deal. Instead, in the second plea deal, the sentence enhancements were removed and replaced with a guaranteed 20-year term of imprisonment.

Resnick argues that this court should disregard the existence of the second deal

on the basis that "the subsequent plea offer was considerably less advantageous than the one he accepted, given that it was a Rule 11(c) offer that locked him into a 20-year sentence rather than allowing him to argue for any sentence within the applicable guideline range." (DE # 197 at 5 (internal citation omitted).) Yet, the applicable Guideline range was the same under both plea agreements. Under the first plea agreement, after the *twenty-five* level enhancements Resnick agreed to recommend, Resnick's applicable Guideline range was life imprisonment. The Guideline range would then be reduced to the statutory maximum of twenty years – the same term guaranteed in the second plea deal.

There are instances where a defendant's own actions, and not the poor performance of his counsel, must be said to be the cause the defendant's prejudice. For example, in *United States v. Parker*, the defendant's counsel misadvised him regarding the effects of accepting the government's plea deal. 609 F.3d 891, 893 (7th Cir. 2010). Specifically, counsel underestimated the maximum possible term of imprisonment and told the defendant that admitting to 50 or more kilograms of cocaine in the plea agreement, versus the 15 kilograms for which the defendant actually believed himself responsible, would not affect his sentence other than determining the recommended Guideline range. *Id.* The defendant subsequently entered into the plea agreement, in which he admitted to the 50 or more kilograms of cocaine, and was sentenced to a term of imprisonment greater than the term his counsel had identified as the maximum

possible term. *Id.* Nevertheless, the Seventh Circuit rejected the defendant's subsequent ineffective assistance claim, finding that the defendant "has only himself to blame for admitting under oath to a quantity of drugs he now disputes." *Id.* at 895. The Court found that defense counsel's bad advice was not the cause of the defendant's prejudice because the defendant had a subsequent opportunity to truthfully respond to the judge's questions, and had he done so, potentially secured the lower sentence he claims his counsel's bad advice deprived him. *Id.*

Here, as in *Parker*, the prejudice Resnick suffered was self-inflicted. Resnick had the opportunity to accept a second plea deal that would have secured him the more favorable sentence that he claims his counsel's performance deprived him of when his counsel failed to object to the Government's withdrawal from the first deal. In determining whether Resnick was denied his Sixth Amendment right to counsel, the court's "ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (internal citation omitted). Here, counsel's failure to renew his objection before this court did not affect the fundamental fairness of the plea process, because Resnick had the opportunity to enter into a second plea agreement that would have guaranteed him the same sentence. Resnick failed to accept that second deal. Any prejudice he sustained as a result cannot be attributed to his counsel.

## IV.    PRE-TRIAL AND TRIAL

Resnick raises nine instances where he claims his counsel provided ineffective assistance during the course of the trial. None of these instances, alone or considered as a whole, establishes a claim for ineffective assistance of counsel.

### A.    *Counsel's Failure to Obtain a Forensic Psychologist Expert*

The Government called several expert witnesses to testify at trial. The Government provided timely notices for each of these witnesses. (DE # 86.)

One expert witness was Supervisory Special Agent William Donaldson of the Federal Bureau of Investigation's Behavioral Analysis Unit. The Government's notice stated that Agent Donaldson's testimony would include testimony that: (1) it is common for law enforcement to discover child pornography material in the possession of targets under investigation for sexually abusing minor children; (2) the ways in which offenders "groom" child victims; and (3) delayed disclosure of abuse by child victims is common. (*Id.* at 6-7.)

At trial, Agent Donaldson testified that in his experience it is common to find child pornography when investigating individuals accused of sexually abusing children. (DE # 122 at 140.) He also explained that there are scientific studies that show the importance of child pornography to offenders who abuse children. (*Id.*) Agent Donaldson testified:

> A.    For example, there is a study that's referred to as the Butner Study. And in the Butner Study, they were looking at child pornography

> collectors and to try to determine out of that pool of collectors, was there any ties to hands-on offending, contact offending. And in the Butner Study, they were able to determine that there were approximately 85 percent of their sample population that they were looking at had actual contact offenses above and beyond what they had been incarcerated for just the possession of child pornography.
>
> Q.     So those people were in jail for possessing child pornography, and they disclosed - - 85 percent of them admitted to having prior to that sexually abused at least one child?
>
> A.     That's correct.
>
> Q.     What was the average number of victims per offender in that study that you referred to?
>
> A.     Twelve, 12 victims per offender.
>
> Q.     And those were people, again, they weren't prosecuted for the hands-on offense; they were just prosecuted for possessing the child pornography?
>
> A.     That's correct.

(*Id.* at 141.) Agent Donaldson did not provide any testimony regarding Resnick specifically, and was not familiar with the facts of Resnick's case. Resnick's counsel did not cross-examine Agent Donaldson, did not call a defense expert to rebut Agent Donaldson's testimony, and never consulted with an expert on child sexual abuse in preparation for trial.

Resnick argues that his counsel's failure to investigate, cross-examine, and present rebuttal testimony amounted to ineffective assistance. Resnick specifically takes issue with his counsel's failure to challenge: (1) Agent Donaldson's testimony regarding

the correlation between possession of child pornography and child sex abuse; and (2) the methods by which offenders groom child victims. (DE # 184 at 35.)

"It is well established that trial counsel has a duty 'to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.'" *Thompson v. United States*, 436 F. App'x 669, 670–76 (7th Cir. 2011), *as amended on denial of reh'g* (Dec. 9, 2011) (quoting *Strickland*, 466 U.S. at 691). "If the need for an expert was clear and one was reasonably available, counsel should at least consult with one." *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010) (citing *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001), *vacated by agreement of the parties*, 268 F.3d 485 (7th Cir. 2001)). However, "[t]hat is not to say reasonable performance requires retaining an expert every time the state does or every time the state presents the testimony of a forensic expert." *Thomas v. Clements*, 789 F.3d 760, 770 (7th Cir. 2015).

To prevail on his claim, Resnick needed to provide support for what an investigation would have yielded. "It is firmly established that in order to succeed on a failure to investigate claim, the petitioner must demonstrate what the attorney would have discovered had a proper investigation occurred, as well as what evidence would have been introduced at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). "In the case of an uncalled witness, we have held that at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *Id.*; *see also Long v. United States*, 847 F.3d 916,

920 (7th Cir. 2017); *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011).

Here, Resnick attached declarations from two potential witnesses. First, Resnick attached a declaration from Dr. Andres Hernandez, one of the co-authors of the Butner Study. (DE # 184-3.) In his declaration, Dr. Hernandez indicates that Agent Donaldson's use of the Butner Study was inappropriate. (*Id.* at 2.) According to Dr. Hernandez's declaration, "[i]t is inappropriate and a misuse of the Butner Study to try to draw *any* conclusions about a particular individual who was not a participant in the study or subject to a thorough psychosexual evaluation. . . . The Butner Study does not claim that its conclusions or findings are generalizable to all child pornography offenders." (*Id.* (emphasis in original).)

However, Dr. Hernandez subsequently retracted this statement in a second declaration, attached to the Government's response. (DE # 194-2.) In his second declaration, Dr. Hernandez explained that, in reviewing the first declaration, he was under the mistaken belief that Resnick was charged exclusively with possession of child pornography. (*Id.* at 2.) After a closer review of the trial transcript, Dr. Hernandez wished to retract all of the opinions he provided in his first declaration. (*Id.* at 3.)

The second expert Resnick cites in support of his motion to vacate is Dr. Elliot Atkins, a clinical psychologist. (DE # 184-4.) Dr. Atkins' declaration provides points of cross-examination that he would have advised defense counsel to utilize in questioning Agent Donaldson, had Dr. Atkins been consulted. These points of examination pertain

to Agent Donaldson's experience, criticism of the Butner Study, and points of rebuttal regarding Agent Donaldson's testimony on the techniques abusers use to groom child victims. Dr. Atkins also provided an example of testimony he could have provided, had he been called as a rebuttal expert. This testimony would have included criticism of the Butner Study and challenges to the correlation between possession of child pornography and contact offenses against children.

1.    Counsel's Performance was Not Deficient

In his declaration, Resnick's trial counsel explains that he decided not to consult with a behavioral expert, or cross-examine Agent Donaldson, as part of his strategy to allow the Government to "overkill" the issues. Counsel explained, "I felt that I would let [the Government] overkill the case with testimony like Agent Donaldson's and that the jury would use common sense and logic and see that such overkill looked ridiculous." (DE # 184-1 at 5.) "I felt that presenting an expert or cross-examining Agent Donaldson would create a dialogue that might get in the way of the overkill." (*Id.*)

Counsel's strategy was one that aimed to undermine the credibility of A.M. and emphasize the circumstantial nature of much of the Government's evidence. In closing argument, trial counsel argued that the Government presented Agent Donaldson as a distraction; "smoke and mirrors." (DE # 124 at 54-55.) Counsel emphasized that Agent Donaldson provided only general testimony; never applying his knowledge and experience to the facts of Resnick's case. (*Id.*) He argued that, with all of the resources of

the federal government, if the prosecution had stronger evidence, or could have provided evidence linking Agent Donaldson's testimony to the facts of Resnick's case, they would have done so. (*Id.*)

This court's review of counsel's strategic decisions is "highly deferential" and this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. In light of this standard of review, this court cannot say that Resnick's counsel was ineffective for failing to cross-examine Agent Donaldson or consult with, and call, a defense expert to rebut Agent Donaldson's testimony. Counsel's strategy of dismissing Agent Donaldson's testimony as a red herring, unworthy of attention or attack, was not outside the wide range of acceptable legal strategies. Moreover, this argument may have been less forceful had counsel engaged in the rigorous questioning Resnick believes was required.

In addition to counsel's "overkill" strategy, there are many other reasons a trial attorney in counsel's place would not have called a rebuttal expert or cross-examined Agent Donaldson. While trial counsel's affidavit does not provide detailed information regarding his trial strategy, such information is unnecessary. "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. "Although courts may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available

evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Id.* at 109 (internal citations omitted). A reasonable attorney in Resnick's counsel's place could have concluded that calling a rebuttal expert, or engaging Agent Donaldson in protracted cross-examination on opinions that were not specific to Resnick's case, would only serve to emphasize these points to his client's detriment, or open the door for a battle of the experts. The Supreme Court has recognized that it is a reasonable trial strategy to decline to call a rebuttal expert based on "the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury from whether [the alleged victim] was telling the truth, or transform the case into a battle of the experts." *Id.* at 108.

Moreover, Resnick's trial counsel was entitled to make strategic choices regarding the allocation of defense resources. Counsel stated that he did not consult with any potential rebuttal experts in part because he did not believe that the Government would present extensive testimony regarding grooming or the Butner Study. (DE # 184-1 at 5.) This was not an unreasonable calculation and was largely a correct prediction of the testimony at trial. "*Strickland* [] permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" *Harrington*, 562 U.S. 106 (internal citation omitted). "An attorney can avoid activities that appear

'distractive from more important duties.'" *Id.* at 107 (internal citation omitted).

Resnick's counsel "was entitled to formulate a strategy that was reasonable at the time

and to balance limited resources in accord with effective trial tactics and strategies." *Id.*

### 2. Resnick was Not Prejudiced

It is Resnick's burden to demonstrate that there is a substantial, not just

conceivable, likelihood that the result of his trial would have been different, had

counsel cross-examined Agent Donaldson or presented a rebuttal expert. *Harris*, 698

F.3d at 644. *See also Harrington*, 562 U.S. at 112 (*Strickland* prejudice "does not require a

showing that counsel's actions 'more likely than not altered the outcome,' but the

difference between *Strickland*'s prejudice standard and a more-probable-than-not

standard is slight and matters 'only in the rarest case.'" (internal citation omitted)).

Resnick has not met this burden. Even if Resnick's trial counsel had elicited

testimony through Agent Donaldson, or a different expert witness, that undermined the

correlation between possession of child pornography and contact offenses against

children, there is not a reasonable likelihood that this would have affected the outcome

of Resnick's case. Had this testimony been elicited, the jury would merely have

evidence that not all experts agree that such a correlation exists. Had an expert been

called, or Agent Donaldson cross-examined, the jury would have heard testimony that

certain behaviors Agent Donaldson described as grooming behaviors, such as giving

gifts to children, might have an innocuous intent. This is something the jury surely did

not require expert testimony to consider, and it is a point defense counsel made during opening statements. The jury would then be free to give the competing expert testimony whatever weight it believed appropriate, in light of all of the other evidence. And the other evidence against Resnick was powerful.

A.M. testified that Resnick repeatedly sexually abused him over their two-week road trip. A.M. provided details of their trip that were corroborated by other witnesses and by other evidence admitted during trial. For example, other evidence supported A.M.'s testimony that he and Resnick had taken the cross-country trip; that Resnick had been pulled over by a trooper during the course of the trip; that Resnick was in possession of a firearm; and that Resnick brought that firearm with him during the trip.

When A.M. disclosed the abuse to law enforcement, and alleged that Resnick showed him child pornography during their trip, law enforcement obtained a search warrant for Resnick's home and discovered more than 200 child pornography videos on Resnick's laptop computer. A.M. identified the laptop as the same laptop Resnick used to show him child pornography.

K.M. corroborated A.M.'s version of events regarding the "pool party." K.M. then provided evidence that Resnick abused K.M. in their hotel room later that night.

The jury also heard evidence of Resnick's changing story regarding his relationship with A.M. and K.M. when he was questioned by law enforcement in Florida, at first claiming that he did not know who A.M. was, and later admitting to

taking A.M. on the extended road trip.

There was also an abundance of circumstantial evidence elicited against Resnick. For example, the jury heard evidence that Resnick called a police station to see if there was a warrant out for his arrest; he googled countries that do not have extradition treaties with the United States; and he appeared to have deleted the browsing history on his computer sometime in the months following his trip with A.M.

Given the evidence against Resnick, there is not a better-than-negligible chance that the outcome of Resnick's case would have been different had trial counsel elicited the evidence Resnick identifies.

B.    *Counsel's Failure to Timely Notice a Forensic Computer Expert*

Resnick argues that his counsel was ineffective when he failed to timely consult with, and notice, a forensic computer expert who could testify at his trial. The parties were ordered to disclose their trial witnesses by July 23, 2013. (DE # 85.) The Government provided notice that it would call Detective Brian Broughton of the Martin County Sheriff's Office. (DE # 86.) Detective Broughton was the officer who searched Resnick's computer in connection with Florida case. The Government gave the defense notice that Detective Broughton would testify as a computer expert; discuss his search of Resnick's computer; explain how peer-to-peer file sharing works; explain how offenders access and download child pornography; and explain how files are stored on computers. (*Id.*)

Three days after the deadline to notice witnesses expired, Resnick's trial counsel sought leave to add a defense computer expert. (DE # 108.) This court denied that request. (DE # 111.) Resnick now argues that his trial counsel's failure to timely notice a forensic computer expert, when counsel knew that the Government would argue that Resnick deleted child pornography from his computer, amounted to constitutionally deficient representation. (DE # 184 at 16.)

### 1.    Resnick was Not Prejudiced

Trial counsel's failure to timely notice a forensic computer expert did not "render[] him unable to contest the government's contention that he had purposefully deleted child pornography from his computer," as Resnick claims. (*Id.* at 37.) First, Detective Broughton was unable to say whether Resnick had deleted child pornography from his computer. Rather, he testified that it was *possible* that Resnick had deleted evidence of child pornography from his computer.[3]

Second, Resnick was not prejudiced by the absence of a defense computer expert. "*Strickland* does not enact Newton's third law for the presentation of evidence,

---

[3]  Detective Broughton testified that when computer files are deleted, they are relegated to the computer's unallocated space. (DE # 122 at 294.) Once deleted files are in the unallocated space, they can only be viewed using forensic software, and only if the data has not been overwritten by the computer's operating system. (*Id.* at 219.) Detective Broughton testified that he did not conduct a thorough examination of the unallocated space on Resnick's laptop and therefore could not confirm whether child pornography had been deleted from Resnick's computer. (*Id.* at 294.)

requiring for every prosecution expert an equal and opposite expert from the defense."
*Harrington*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* Indeed, counsel's cross-examination of Detective Broughton was strong and highlighted the points Resnick now argues an expert could have made. For example, on cross-examination Resnick's trial counsel elicited admissions from Detective Broughton that: he did not discover any child pornography that had been saved to the computer in 2008 (the period of time relevant to the charged conduct); he could not say when the internet searches for child pornography were made; he could not say with certainty whether Resnick was the person who saved the child pornography to the computer; and he agreed that it would be sensible for a person who knew himself to be under investigation to delete evidence of wrongdoing from both the allocated *and* unallocated space on his computer. (DE # 122 at 289-299.)

Third, Resnick has not established that, had his counsel provided timely notice, there is a forensic computer expert who could have contradicted the Government's evidence that it was possible that Resnick had deleted the pornography from his computer. Such a showing was necessary for Resnick to prevail on his ineffective assistance of counsel claim. *See Wright*, 125 F.3d at 1044.

Finally, the weight of any such expert testimony would be stymied by the fact that in his Florida plea agreement (which was admitted into evidence) Resnick

admitted: "[t]he forensics review of the HP Pavilion tower computer resulted in the recovery of numerous deleted child pornography pictures and video phone mail pictures in the unallocated space of the hard drive." (DE # 121 at 304.) This evidence that Resnick deleted child pornography from his tower computer would likely diminish any benefit Resnick might have gained by obtaining expert testimony regarding deletion of evidence from his laptop. Thus, Resnick has not established that if his counsel had timely noticed a defense computer expert, there is a better-than-negligible chance that the outcome of his case would have been different.

C.    *A.M.'s Past Sexual Conduct*

During pretrial motions, Resnick's trial counsel argued that the defense should be permitted to introduce evidence of A.M.'s past sexual contact with K.M. (DE # 99.) Specifically, his trial counsel argued for the admission of an incident during which A.M. and K.M. were discovered in an act of mutual masturbation, and when questioned by K.M.'s mother, the boys first made their accusations against Resnick. This court denied admission of this evidence. (DE # 107 at 18.)

Resnick now argues that his counsel was ineffective for failing to investigate information that "A.M. had previously fabricated sexual allegations against an adult in order to get out of trouble when caught in sexual misconduct himself." (DE # 184 at 37.) Resnick argues that his trial counsel should have made the specific argument that this evidence was admissible to show that A.M. had a pattern of making false accusations,

rather than merely making an argument that this evidence was admissible to attack A.M.'s credibility. (*Id.* at 38.) In support of his argument, Resnick points to a footnote in trial counsel's brief, which states: "It is stated in discovery that A.M. has likely been sexually abused by people other than Resnick many times, starting when he was a toddler and his grandmother found A.M. performing oral sex on A.M.'s uncle. Both boys were of a similar age at the time." (DE # 99 at n. 5.) Resnick represents that there is evidence that, after A.M. was discovered during this second incident, A.M. said he learned the behavior from another adult, just as he did when he was later caught with K.M.[4] (DE # 197 at 23.)

### 1. Counsel's Performance was Not Deficient

Resnick has not met his burden of establishing ineffective performance by trial counsel. First, although counsel could have made the argument more clearly, counsel *did* argue that this evidence was admissible to show that the boys only accused Resnick because they were caught in a sexual act and K.M.'s mother was demanding answers. Specifically, Resnick's counsel argued that this evidence "will serve to inform the jury as to the circumstances that led to these two minors making allegations against Resnick: that they were touching each other and were caught by an authority figure who demanded answers for their behavior." (DE # 99 at 14-15.)

---

4 Resnick states that he is not currently in possession of the FBI report where this information is located.

## 2.    Resnick was Not Prejudiced

Resnick has also failed to establish prejudice. Resnick has not given this court any reason to believe that A.M.'s statement to his grandmother, regarding where he learned the behavior, was false. According to the briefing, A.M. was a toddler at the time he was caught performing the act and attributed his knowledge to an adult. Evidence that A.M. was previously abused by other people is unlikely to be admissible on its own. Such evidence is only arguably admissible if there were some indication that it was false. Resnick has not pointed to any evidence (in his possession or otherwise) that this accusation was false. Thus, Resnick has failed to establish that his counsel was ineffective for failing to make this specific argument.

### D.    *Resnick's Refusal to Take a Polygraph Examination*

During trial, Resnick's counsel did not object when evidence was introduced that Resnick refused to take a polygraph examination. Both sides briefly commented on Resnick's refusal to take a polygraph during closing arguments. Resnick now argues that trial counsel was constitutionally ineffective when he failed to object to the admission of this evidence at trial.

On appeal, the Seventh Circuit reviewed the admission of this evidence under the plain error standard of review because Resnick's counsel did not preserve an objection during trial. *Resnick*, 823 F.3d at 896. The Seventh Circuit found that it was not plain error to admit this evidence. First, the Court noted that, while its "decisions have,

in practice, pointed in only one direction: affirming the exclusion of polygraph evidence," based on Federal Rule of Evidence 403 concerns, the Court has never adopted a blanket rule excluding the use of polygraph evidence in federal prosecutions. *Id.* at 897. Thus, the Court found that it was not plain error to admit this evidence. *Id.* ("The law is not settled, and the case against Resnick was airtight."). Likewise, with respect to Resnick's Fifth Amendment rights, the Court found that it was not plain error to admit this evidence because the Court had "never before held that the refusal to take a polygraph implicates the Fifth Amendment." *Id.* at 898.

The Court also determined that the admission of this evidence did not prejudice Resnick because his refusal to take a polygraph "was mentioned only once by each side during closing, the evidence against him was very strong, and his defense did not depend on his credibility because he did not take the stand at trial." *Id.* However, the Court stressed that its holding "is heavily influenced by the fact that we are reviewing only for plain error." *Id.* at 891.

Resnick contends that, had counsel objected, either this court would have sustained the objection, or the Seventh Circuit, unconstrained by plain error review, would have reversed his conviction on appeal.

### 1. Counsel's Performance was Not Deficient

Trial counsel's failure to object to testimony that Resnick refused to take a polygraph was not an error "'so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (internal citation omitted).

Counsel's failure to object to the admission of this evidence was not objectively unreasonable because the question of its admissibility was (and is) unsettled in this Circuit. Where the law is unsettled, there is no ineffective assistance of counsel. *See e.g. Tucker v. United States*, 889 F.3d 881, 882–85 (7th Cir.), *cert. denied*, 139 S. Ct. 593 (2018) (rejecting as "unpersuasive" the argument that counsel should have objected based on evolving law in other jurisdictions where the law in this Circuit was unsettled; "failure to anticipate a change or advancement in the law does not qualify as ineffective assistance."); *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014) (rejecting ineffective assistance of counsel argument where existing law was unsettled); *United States v. Fleming*, 676 F.3d 621, 626 (7th Cir. 2012) ("We cannot say that counsel's strategic decision deviated from prevailing professional norms, particularly because this circuit had not laid down a clear rule on the issue."); *Froschauer v. McBride*, 4 F.3d 996 (7th Cir. 1993) (Table) (argument that counsel was ineffective for failing to make an objection based on a trend in the law was "a thinly disguised attempt to hold counsel accountable for failing to anticipate a change in state law, a failure not considered outside the range of professional assistance."); *United States v. Parrott*, 906 F.3d 717, 719 (8th Cir. 2018) ("[F]ailing to raise an argument that requires the resolution of an unsettled legal question rarely constitutes ineffective assistance[.]" (internal citation and

quotation marks omitted)).

As the Seventh Circuit explained in Resnick's direct appeal, the Court has "not yet adopted a blanket rule excluding the use of polygraph evidence in federal prosecutions." *Resnick*, 823 F.3d at 897. Additionally, the Court has "never before held that the refusal to take a polygraph implicates the Fifth Amendment." *Id.* at 898. Given the unsettled nature of the law, counsel's failure to object to the admission of this evidence was not objectively unreasonable.

True, it may have been better practice for counsel to have objected. However, "the Constitution does not ensure that every defendant receives the benefit of superior advocacy—how could it, given that half of all lawyers are below average?" *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994). Defendants are entitled only to the benefit of "an advocate" as contemplated by the Sixth Amendment. *Id.* Because Resnick's counsel did not render objectively unreasonable assistance, Resnick's claim fails on the performance prong of the *Strickland* analysis.

<u>2.</u>    <u>Resnick was Not Prejudiced</u>

Resnick's claim also fails on the prejudice prong of the *Strickland* analysis. As discussed in an earlier section of this opinion, the evidence against Resnick was powerful. The admission of references to Resnick's refusal to take a polygraph did not "so undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

31

Furthermore, the Seventh Circuit has already determined that Resnick's trial was not prejudiced by the admission of this evidence. The Seventh Circuit has noted that the prejudice analyses for plain error review and ineffective assistance of counsel are nearly identical. *See Swanson v. United States*, 692 F.3d 708, 717 (7th Cir. 2012). Other courts have come to a similar conclusion. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004) (applying the *Strickland* prejudice standard during "affecting substantial rights" inquiry in plain error analysis); *United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015) (plain error review is "similar to *Strickland*'s prejudice inquiry"); *Gordon v. United States*, 518 F.3d 1291, 1300 (11th Cir. 2008) ("[T]he 'substantial rights' standard of plain error review is identical to the 'prejudice' standard of an ineffective assistance claim."); *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005) ("The standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis."); *United States v. Williams*, 358 F.3d 956, 966-67 (D.C. Cir. 2004) (defendant failed to establish prejudice under *Strickland* "[f]or the same reason" he failed to demonstrate prejudice under plain error review).).

Resnick attempts to circumvent the Circuit's finding that his trial was not prejudiced by instead arguing that his *appeal* was prejudiced by his counsel's failure to

object.[5] The *Strickland* analysis requires the court to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Yet, Resnick's attention is focused on the wrong "proceeding." *Strickland* mandates, "the ultimate focus of inquiry must be on the fundamental fairness of *the proceeding whose result is being challenged*." *Id.* at 696 (emphasis added). Here, the proceeding whose result is being challenged is Resnick's conviction in this court. And, as the Seventh Circuit has already determined, the outcome of the proceeding in this court was not prejudiced by the admission of evidence that Resnick refused to take a polygraph examination.

The analysis for which Resnick advocates would produce the perverse result of vacating his conviction – despite there being no prejudice on the outcome of his jury trial – on the basis that the Court of Appeals would have ruled differently had the question been put before it *de novo*. This is a result the Seventh Circuit has suggested it could not countenance. *See Swanson*, 692 F.3d at 717 ("'It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a

---

[5] Resnick is correct that, had his attorney preserved an objection to the admission of this testimony, the Seventh Circuit's standard of review would have been different. The Court would have reviewed this court's admission of the evidence, in light of its probative and prejudicial value, for abuse of discretion. *See United States v. Garcia-Avila*, 737 F.3d 484, 490 (7th Cir. 2013). The Court would have reviewed this court's legal conclusions regarding Resnick's Fifth Amendment rights *de novo. See United States v. Caira*, 737 F.3d 455, 460 (7th Cir. 2013); *United States v. Swanson*, 635 F.3d 995, 1001 (7th Cir. 2011).

lesser burden by articulating it as a claim of ineffective assistance.'" (quoting *Gordon*,

518 F.3d at 1298).

Resnick was not prejudiced by his counsel's failure to object to the admission this

evidence, for all of the reasons articulated by the Seventh Circuit in his direct appeal,

and for all of the reasons articulated within this opinion. Thus, counsel's failure to

object did not amount to ineffective assistance of counsel.

     *E.     Victim Impact Testimony*

Resnick's remaining trial-phase claims are also based on his counsel's failure to

object to the admission of evidence. "An ineffective assistance claim based on a failure

to object is tied to the admissibility of the underlying evidence. If evidence admitted

without objection was admissible, then the complained of action fails both prongs of the

*Strickland* test: failing to object to admissible evidence cannot be a professionally

'unreasonable' action, nor can it prejudice the defendant against whom the evidence

was admitted." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). *See also Stephenson v.

Wilson*, 619 F.3d 664, 670 (7th Cir. 2010) ("The test of ineffective assistance . . . is whether

the existing law would have required the courts to uphold the objection."); *Leiser v.

Thurmer*, 367 F. App'x 691, 696 (7th Cir. 2010) ("When evidence is admissible, counsel is

not ineffective for failing to object.").

Resnick argues that trial counsel was ineffective for failing to object to A.M.'s

testimony regarding how Resnick's abuse affected his life. During the trial, the

Government pursued the following line of inquiry from A.M., without objection from

defense counsel:

> Q.   [A.M.], right after the trip and right after you told law enforcement, how often did you think about what David Resnick did to you?
>
> A.   Almost every night I had night terrors.
>
> Q.   Tell us about that.
>
> A.   It was unpleasant. You wake up screaming every night thinking something is gonna happen, but it never does; living in constant fear.
>
> Q.   How long did the night terrors last?
>
> A.   It didn't stop until I was with my grandma fostering me and she got me a dream catcher and surprisingly it did stop.
>
> * * * *
>
> Q.   [A.M.], explain to the jury how the events you've testified about affected your life.
>
> A.   At first, it was just - - I was living in constant fear and couldn't do anything; I was always afraid. And every little thing that reminded me of it made me go into shock. I was just so upset about what happened, I couldn't live with it. Then I went to therapy, got help, and now I can talk about it a little bit better than what I used to; and I can talk about it now so that's a good step forward for me.

(DE # 121 at 222-224.)

The Government argues that it elicited this testimony to rebut the defense theory,

forecasted in the defense's opening statement, that because A.M. did not immediately

disclose the abuse, the jury could infer that the abuse did not happen. (*See id.* at 173,

"[I]f you assume some of the things the government says is true, then once the child is safe, he should have reported it, but he didn't. Why not? Maybe 'cause it didn't happen."). Shortly before making the statements Resnick now challenges, A.M. testified on direct examination that he was afraid to tell anyone about what had happened to him on the trip because Resnick told him that "he would come back and kill my family and me if I had told anybody." (*Id.* at 214.)

Resnick concedes that testimony similar to that elicited from A.M. is commonly admitted to explain why a child might not disclose abuse right away (DE # 197 at 25), but argues that A.M.'s testimony in this case concerned the period of time *after* his disclosure. (*Id.*) This is not at all clear from the record. As Resnick's trial counsel took pains to point out during cross-examination, A.M. disclosed the full story of Resnick's abuse over the course of several years (*see* DE # 121 at 233-234, 241-243), and it is unclear when A.M. went to live with his grandmother.

Moreover, counsel's failure to object to the admission of this evidence did not amount to ineffective assistance because the evidence was admissible. *See Hough*, 272 F.3d at 898. A.M.'s testimony regarding the ways in which Resnick's abuse affected his life after he returned home was relevant to rebut the defense argument that A.M.'s delay in disclosing the abuse suggests that he fabricated the abuse. The probative value of this testimony was not substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, particularly in light of A.M.'s testimony regarding the abuse itself.

36

Because the evidence was admissible, trial counsel's failure to press an unavailing argument was not "outside the wide range of professionally competent assistance" that *Strickland* permits.

Likewise, the admission of this evidence did not prejudice Resnick because it was admissible. *See Hough*, 272 F.3d at 898. Moreover, in light of the substantial evidence against him, and the inflammatory nature of the charges in general, there is not a reasonable probability that the result of Resnick's trial would have been different had the jury not heard A.M.'s testimony that he felt afraid and had nightmares following the abuse.

F.      *No Passenger Policy*

Resnick argues that his trial counsel provided ineffective assistance when he failed to object to testimony that Resnick's employer did not allow employees to take non-employee passengers on work trips. (DE # 184 at 40.) Resnick argues that his counsel should have objected pursuant to Federal Rule of Evidence 404(b), on the basis that the evidence was not relevant and served no purpose other than to paint Resnick as a person with the propensity to break rules.

Resnick has not established that his counsel's strategic decision not to object to this evidence was objectively unreasonable. Defense attorneys are not required to make every possible objection; they are permitted to make strategic choices about which objections will best serve their clients. *See e.g. United States v. Allison*, 59 F.3d 625, 629

(7th Cir. 1995); *United States v. Pedigo*, 12 F.3d 618, 623 (7th Cir. 1993) (counsel's failure to object may have been a strategic choice in an effort to avoid drawing attention to certain testimony or irritating the jury). Resnick's counsel's strategy of permitting the Government to "overkill" the case by allowing this testimony was consistent with counsel's theme, which he argued in closing, that the Government's evidence amounted to "[s]moke and mirrors. Insinuation and innuendo." (DE # 124 at 41.) Given the evidence against his client, counsel's strategy was not objectively unreasonable. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]").

Resnick has not demonstrated a reasonable probability that the admission of this evidence prejudiced him. This evidence was of minor significance. Its admission does not undermine confidence in the overall outcome of his trial. Thus, his counsel's failure to object to the admission of this evidence did not constitute ineffective assistance.

G.    *Resnick's Offer to Drive Three Children Home from a Campsite*

Next, Resnick argues that his counsel should have objected to the admission of evidence that he offered to drive three children home from a campsite. He argues that there was no evidence that he ever attempted to engage in any improper conduct with these children or had an improper interest in these children, and therefore his counsel should have made a relevance objection. (DE # 184 at 41.)

This claim fails for the same reasons identified above in Section F. Counsel's

strategic decision not to object was not objectively unreasonable, and the admission of this brief testimony did not prejudice the outcome of Resnick's case.

H.    *Factual Basis for Florida Plea*

Resnick argues that his counsel should have objected when the Government sought to read the entire factual basis for his Florida plea agreement into the record. Resnick concedes that his prior conviction for possession of child pornography was admissible under Federal Rule of Evidence 414, but argues that his counsel should have objected pursuant to Federal Rule of Evidence 403 to admission of "a multi-page, graphically detailed rendition of the images he possessed" and he claims that the "description of images were read out to the jury in full, revolting detail." (*Id.* at 41-42.)

Resnick is conflating two separate evidentiary issues. True, his counsel did not object when the Government sought to read the entire factual basis for his Florida plea agreement to the jury. (*See* DE # 121 at 300-301.) However, trial counsel *did* object when the Government had a law enforcement agent read graphic descriptions of a small sample of the videos that were discovered on Resnick's computer. (*Id.* at 307-308.)

With respect to admission of the factual basis for Resnick's Florida plea agreement, counsel's failure to object was not ineffective assistance because this evidence was admissible. Rule 414 provides: "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter

39

to which it is relevant." Under the Rule, "child molestation" includes "any conduct prohibited by 18 U.S.C. chapter 110[.]" Fed. R. Evid. 414(d)(2)(B). In the Florida plea, Resnick pleaded guilty to violating 18 U.S.C. § 2252, which is within chapter 110. Thus, the evidence contained in the Florida plea was admissible under Rule 414.

The evidence was also admissible under Rule 403. In the Florida plea agreement, Resnick admitted that he was the owner of the HP Pavilion laptop computer where the child pornography was discovered. (DE # 121 at 302.) At the time this evidence was elicited, A.M. had already testified that this was the same laptop computer on which Resnick showed him child pornography during their trip. This evidence made it more likely that Resnick had child pornography on his computer in 2008 during the charged offense, and more likely that he showed that pornography to A.M. during their trip. It was also probative to Resnick's sexual interest in young boys. The probative value of this evidence was not substantially outweighed by its prejudicial effect. The stipulation contained information about: the number of files discovered; seven file names that identified the age, sex, and act performed on the children in the video; and a statement that many of the videos discovered on Resnick's computer included "sadomasochistic sexual abuse of teens, preteens, toddlers and babies." (DE # 121 at 302-304.) The fact that this evidence contained short descriptions of child abuse does not require its exclusion under Rule 403. "That evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial." *United States v. Zahursky*, 580 F.3d

515, 525 (7th Cir. 2009) (emphasis in original); *see also United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011).

Because the evidence was admissible, this claim also fails on the prejudice prong. *See Hough*, 272 F.3d at 898.

I.    *Reference to Text Stories*

Resnick's final challenge to his counsel's trial performance is based on counsel's failure to object to testimony that law enforcement discovered stories of child molestation on Resnick's computer. (DE # 184 at 42.) Resnick also argues that his counsel should have requested a limiting instruction after the testimony was admitted, instructing the jury that possession of these stories was not unlawful. (*Id.*)

This claim fails because evidence of these stories was admissible. *See Hough*, 272 F.3d at 898. This evidence was admissible under Rule 404(b) to prove intent; to demonstrate Resnick's sexual interest in young children; and was probative to the question of whether Resnick sexually abused A.M. during their trip. Moreover, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Given the evidence that Resnick unlawfully possessed child pornography involving real children, evidence that he also possessed stories involving child sex abuse was not unfairly prejudicial.

Furthermore, Resnick's counsel was not ineffective for failing to request a limiting instruction after this evidence was admitted. "[T]he decision not to request a

41

limiting instruction is solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence. If the lawyer cannot stop the evidence from being admitted, it is perfectly rational to decide not to draw further attention to it by requesting a motion for a limiting instruction." *United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996).

       J.       *Cumulative Prejudicial Effect*

It is not enough for this court to consider whether each alleged error, alone, rises to the level of *Strickland* prejudice. "The Supreme Court insists that judges must not examine a lawyer's error (of omission or commission) in isolation. It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Stephenson*, 619 F.3d at 666.

This court has considered the cumulative effect of all the alleged errors Resnick has identified. Even taken as a whole, Resnick has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different had his counsel raised the objections, alternative arguments, or evidence he identifies. These alleged errors in strategy are not sufficient to undermine confidence in the outcome of his trial, particularly in light of the "airtight" case against him. *See Harris*, 698 F.3d at 645 (assessing the probability of prejudice "requires consideration of the totality of the

evidence before the judge or jury, and a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (internal citation and quotation marks omitted)). Thus, Resnick has failed to establish a claim for ineffective assistance of counsel during his trial.

## V.    SENTENCING

### A.    *Possession of Child Pornography and Likelihood of Recidivism*

In the Government's sentencing memorandum, the Government argued that Resnick's continued possession of child pornography, years after his abuse of A.M., is evidence of his continued sexual interest in prepubescent children. (DE # 136.) The Government argued that an offender's pornography collection is the best indicator of what he wants to do. (*Id.* at 10.) According to the Government, this evidence of Resnick's lasting sexual interest in children, in conjunction with his attempts to act on his interests by attempting to groom children and continuing to download child pornography, indicates that Resnick is likely to re-offend if given the opportunity.

Resnick now claims that the Government's sentencing memorandum implicitly relied upon the Butner Study and Agent Donaldson's testimony, which Resnick maintains his counsel should have challenged. (DE # 184 at 18-19.) Resnick also contends that his counsel should have consulted with experts and presented evidence to specifically rebut the Government's arguments regarding the predictive effect that possession of child pornography may have with regard to hands-on sexual offense

recidivism.[6] (*Id.* at 19.) There are a number of problems with Resnick's argument.

1.    Counsel's Performance was Not Deficient

First, while Resnick claims that the Government's argument regarding recidivism was "overblown and inappropriately drawn" (*id.* at 46), he has not pointed to any evidence that this is so. Resnick has not identified any evidence that his trial counsel could have used to effectively rebut the Government's argument, as he was required to do in order to establish a failure-to-investigate claim. *See Wright*, 125 F.3d at 1044. Resnick appears to rely on Dr. Atkins' declaration, but the only aspect of Dr. Atkins' declaration that is even marginally relevant is his statement that "[t]he majority of sex offenders are not known to have sexually reoffended 5 to 10 years after their release from custody." (DE # 184-4 at 8.) This single statement falls woefully short of the showing Resnick needed to make to establish deficient performance and prejudice from counsel's failure to submit rebuttal expert testimony. The remainder of Dr. Atkins' declaration was of no relevance in the context of Resnick's sentencing – where the question was not whether Resnick's possession of child pornography was probative to whether he abused A.M., but whether his continued pursuit of child pornography after his hands-on offenses against A.M. and K.M. was predictive of future abuse. Dr. Atkins' declaration does not address this latter question.

---

[6] As discussed below, Resnick's trial counsel did present expert evidence from Leo Meagher, who conducted a psychological analysis on Resnick.

Next, this court will also note what Resnick misleadingly failed to mention: his counsel *did* present expert evidence rebutting a correlation between possession of child pornography and contact offenses against children. In his sentencing memorandum, trial counsel cited Leo Meagher, an expert psychologist who evaluated Resnick, and who stated: "Quite often in Child Pornography cases the offenses are confined to viewing pornography and do not escalate to actual hands on offenses against children." (DE # 142-1 at 16-17.)

It was not objectively unreasonable for Resnick's counsel to fail to specifically rebut the Government's position that Resnick's history and conduct in the years following his offenses against A.M. and K.M. made it more likely that Resnick would re-offend. The Seventh Circuit has previously made the same point that the Government made in this case, finding: "[s]tatistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011). "A pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense." *Id.*

In light of the Seventh Circuit's statement in *Garthus* that pedophilic sex offenders who have committed both child-pornography offenses and hands-on sex crimes are more likely to commit future crimes, it would not have been unreasonable

for trial counsel to conclude that his best (and perhaps only) viable strategy would be to argue that Resnick is not a pedophile. Indeed, counsel made this argument. Counsel pointed to Meagher's conclusion that Resnick did not test with characteristics typical of sex offenders or child molesters, and that although he had psychological problems, pedophilia was not one such problem. (DE # 143-1 at 17.)

In light of the foregoing, counsel's performance was not constitutionally deficient.

**2.**     **Resnick was Not Prejudiced**

Counsel's actions also did not prejudice Resnick. Resnick's continued sexual interest in minor children was only a part of the constellation of evidence and argument that this court considered when crafting Resnick's sentence. Resnick has not established that there is a reasonable probability that the outcome of his sentencing would have been different had his counsel presented the unidentified rebuttal evidence.

B.     *Submission of Meagher's Report*

At the same time that Resnick argues that his counsel failed to present sufficient expert evidence at sentencing, he also argues that his counsel was deficient for submitting expert evidence from Meagher. Resnick argues that Meagher's report contained "many unhelpful observations," such as noting Resnick's extreme dominance, severe antisocial trends, lack of empathy, and power and control issues. (DE # 143-3 at 5-9.) The Government highlighted these aspects of Meagher's report

during the sentencing hearing. (DE # 156 at 30.)

Resnick has not established that submitting Meagher's report was objectively unreasonable performance, or that the submission of this evidence prejudiced Resnick's sentencing. Resnick has not identified any alternative evidence that his counsel should have submitted. In the absence of such alternative evidence, it was not an objectively unreasonable strategy to submit Meagher's report, which contained both favorable and unfavorable evidence. Meagher noted that Resnick was open and honest about his background, including his previous convictions; noted that Resnick was very adamant about never having molested a child; Resnick did not test with characteristics typically seen in sex offenders; Resnick did not exhibit or admit behaviors typical of child molesters; and the testing did not indicate Pedophilia. (DE # 143-3 at 1.) It was not an unreasonable trial strategy to submit this evidence, particularly where the Government was arguing that Resnick *did* exhibit characteristics of Pedophilia. For this same reason, Resnick also has not established that there is a better-than-negligible chance that the admission of this evidence prejudiced his sentencing.

C.    *Counsel's Failure to Present Statistical Evidence*

At sentencing, Resnick's trial counsel argued for a below-Guidelines sentence of 30 years. (DE # 143-1 at 18-19.) Resnick's final argument is that his counsel should have presented statistical evidence or comparisons in support of a below-Guideline sentence. (DE # 184 at 20.) Resnick cites a chart created via the U.S. Sentencing Commission's

Interactive Sourcebook indicating that between 2006 and 2016 there were 46 offenders sentenced under USSG § 2A3.1, in a criminal history category VI, who were non-career offenders. (DE # 184-2.) The mean sentence these offenders received was 276 months and the median sentence was 257 months. (*Id.*) Resnick argues that these statistics demonstrate that courts have imposed sentences for offenders like Resnick that were "well-below the 360-month sentence Mr. Wigell advocated for, and well below the life sentence imposed on Mr. Resnick." (DE # 184 at 20.)

Resnick's counsel's failure to point to these statistics during sentencing was not objectively unreasonable. Counsel advocated for a 360-month sentence because that was the statutory minimum for his conviction on Count I. In addition to the mandatory minimum on Count I, Resnick also faced a mandatory minimum 84-month consecutive sentence for his conviction on Count III. Thus, counsel's failure to argue that offenders in Resnick's criminal history category received a mean sentence of 276 months and a median sentence of 257 was not objectively unreasonable, in light of the fact that his client faced a mandatory 444-month sentence. In fact, it would have been reasonable for counsel to conclude that raising the significantly lower mean and median sentences would only serve to highlight the severity of Resnick's offenses and criminal history.

Resnick has not established prejudice, for the same reason. It is not at all clear that had counsel pointed to these statistics, the outcome of Resnick's sentencing hearing would have been different. In addition to his significant mandatory minimum

sentences, this court considered Resnick's Guideline recommended sentence. The presentence investigation report, which Resnick does not challenge, scored Resnick's total offense level at 53 – ten levels above the maximum possible Guideline level of 43, which recommends life in prison. (DE # 145 at 9.) Resnick has not established that there is a reasonable probability that the outcome of his sentencing would have been different had counsel raised this argument.

Based on the foregoing, Resnick has failed to establish that his trial counsel provided objectively unreasonable assistance. Moreover, Resnick has failed to establish that any of the alleged errors, either individually or taken as a whole, prejudiced the outcome of his case. Therefore, Resnick's motion to vacate will be denied.

## VI.    NO HEARING IS NECESSARY

Resnick has requested an evidentiary hearing to further explore some of the issues he identifies in his motion. "The court should grant an evidentiary hearing on a § 2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (internal citations omitted). However, where a petitioner has failed to present facts necessary to substantiate his ineffective assistance claim, he cannot meet the threshold requirement for entitlement to an evidentiary hearing, and a district court may properly deny such a motion. *Fuller v. United States,* 398 F.3d 644, 652 (7th Cir. 2005). Resnick has not presented facts that, if proven, would entitle him to relief. Thus, Resnick is not entitled

to an evidentiary hearing.

## VII. CERTIFICATE OF APPEALABILITY

Pursuant to § 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. A court should issue such a certificate only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find debatable whether the district court correctly resolved the issues or would conclude that those issues deserve further proceedings. 28 U.S.C. § 2255; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). The court thoroughly discussed the controlling case law on the issue at hand and finds that the conditions for the issuance of a certificate of appealability are not present in this case. Therefore no certificate will issue.

## VIII. CONCLUSION

For the foregoing reasons, the court:

(1)     **DENIES** David Alan Resnick's motion to vacate under 28 U.S.C. § 2255 (DE # 183);

(2)     **GRANTS** David Alan Resnick's motion for leave to file excess pages (DE # 185); and

(3)     **DENIES** David Alan Resnick a certificate of appealability.

**SO ORDERED.**

Date: December 19, 2019

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT